May it please the court. My name is Merida Peller and I represented Randy Hightower in the district supervised release hearing. And today I am arguing that the exclusionary rule should be applied to violations of supervised release. I am well aware that the vast majority of circuits that have... Has anybody ever held that the exclusionary rule applies in a violation of supervised release situation? Two circuits, the fifth circuit and the eighth circuit have both held that it does not apply on absent police harassment. And my argument is that the arrest in this case was so egregious, the stop was so improper that it rises to the level of police harassment. The fifth circuit case is U.S. v. Bontes, 952 F. 2nd, 854, it's 1992. And the eighth circuit case is U.S. v. Charles, 531 F. 3rd, 637, 2008. While those are the only two circuits that have had an exception to this rule, I think that there is reasonable... A reason to continue with that. Simply because the Supreme Court in Scott held that parole revocation hearings do not rise to the exclusionary rule does not mean that the supervised release hearing should not. But what would be the difference? In other words, why would there be a different rule for a supervised release hearing as opposed to a parole revocation hearing? There are two different procedures. Traditionally, parole revocation hearings are done by a board as opposed to judges. And often they are simply reinstating the original amount of time somebody was sentenced to. When somebody has been granted parole, they're let out of their sentence early. Supervised release revocation, on the other hand, is something different. Somebody's liberty interest is being taken away in addition to what they have already served for their sentence. Finally, most of the cases that have addressed whether or not the violation of supervised release hearings should have the exclusionary rule have focused on different issues. Either searches by probation officers, which I'm not arguing would merit the exclusionary rule, because as Your Honors are aware, when somebody agrees to supervised release or is placed on supervised release, they do have a reduced privacy interest. But what I'm arguing is that when somebody is stopped by the police, the police who have no idea who somebody is. But, I mean, you just described a difference between a parole revocation hearing and a supervised release hearing. But the Second Circuit has previously held that at least with respect to the constitutional guarantees governing those, supervised release and parole or probation hearings are identical, right? Yes. That's Jones. How do you get around Jones? I get around Jones. I mean, I can understand your argument that they're different, but we've already passed on that and said they're the same, right? The reason I believe that Jones is not applicable here is while they have said they're identical for the collection of due process rights, the collection of due process rights they were discussing are the ones that are guaranteed in Rule 32.1, the right to confront a witness. Those procedures are different than somebody's constitutionally protected right against unreasonable search and seizure. With that, I believe I will rely solely on my papers and I reserve two minutes for rebuttal. Thank you. Can I ask you very briefly about the grand jury minutes? Of course. It's not at all clear to me, I'm not sure it was clear to Judge Rakoff, why you were seeking grand jury minutes other than to challenge the underlying conviction, which was years before, which you can't do. So what's the point? The point was my client strongly believed that the person who testified at the grand jury had not testified truthfully. But that's really a challenge to the underlying conviction. I understand that. It has nothing to do with the revocation. I'm aware. No. Not at all. Okay. I just want to make sure I wasn't missing something. Great. Thank you, Ms. Heller. We'll now hear from Mr. Rodriguez. Good morning, and may it please the Court, my name is Justin Rodriguez. I'm an assistant United States attorney for the Southern District of New York, and I represent the United States on this appeal as I did before the district court. The district court correctly held that the exclusionary rule does not apply in violation of supervised release proceedings in light of the Supreme Court's decision and reasoning in Scott. Since Scott, four Federal courts of appeals have refused to apply the exclusionary rule in the VOSR context. But Ms. Heller says two of them actually support her. So the first case that Ms. Heller cites, the Montes case, was from 1992 and predates Scott by about six years. The second case, which is the Eighth Circuit's case in Charles, created an exception which is not, I would argue, not applicable here based on police harassment. That exception was after the Eighth Circuit decision in Charles rejected by the Seventh Circuit in a recent case in Phillips, and that exception, in addition to not being applicable on the facts here, has no basis in Scott whatsoever. As Your Honor has already hinted, there are two well-settled points of law that compelled Judge Rakoff's ruling in this case. The first is the Supreme Court's holding in Scott, and the second is this Court's repeated acknowledgment about how the constitutional guarantees governing revocation of supervised release are identical to those applicable to revocation of parole and probation. As the courts who have looked at this issue have found, the Supreme Court's reasoning in Scott applies with equal force to supervised release proceedings. In the supervised release context, like the parole revocation context, and this is the key analysis, the substantial social costs of applying the rule far outweigh any marginal deterrence benefits. In Scott, the Supreme Court discussed two substantial social costs of applying the exclusionary rule in the parole context, and those costs are present in the supervised release context as well. First, applying the exclusionary rule in the supervised release context precludes reliable and probative evidence and thereby detracts from the truth-finding process. Second, applying the exclusionary rule in the supervised release context would alter the traditionally flexible nature of supervised release proceedings and invite extensive litigation like this to determine whether particular evidence must be excluded. On the flip side, applying the exclusionary rule in the supervised release context provides only minimal marginal deterrence benefits, because application of the rule in the criminal trial context already provides significant deterrence of unconstitutional searches. As the Supreme Court has observed, officers searching for evidence of criminal conduct do so with an eye towards its introduction at a criminal trial, and that makes sense for two reasons. First, an officer will rarely know in a street encounter whether the person that they are encountering is on federal supervised release before they encounter them. That was certainly the case in this case. The NYPD officers who encountered Mr. Hightower didn't know who he was at all before they stopped him, and they certainly didn't know he was on supervised release. Second, the penalties that apply after a conviction at trial are often much higher than those that would apply for a violation of supervised release. Often, yes. Often, no. Right? I mean, it's a maximum of, what, three years? So, Your Honor, in this particular case, the maximum for Mr. Hightower was 24 months. Well, because of the nature of the violation or because of the nature of the underlying crime? Because of the original term of supervised release that was imposed. So he was convicted in 2007 of being a felon in possession of a firearm, and Judge Rakoff sentenced him to 110 months, which is obviously much higher than the maximum term he could have imposed on, for violation. Two years of supervised release. And two years of supervised release. The statute would have allowed three, but he got two. Is that right? He actually received a year and a day as his actual sentence. No, no. I'm talking about the supervised release. Yes, Your Honor. Yes. It was originally imposed. It was two years. You're correct. Yes. But that's still a pretty significant amount of time, right? Two years? It's absolutely a significant amount of time, Your Honor. But the point is, the analysis that the Supreme Court has invited is an ex-ante analysis in which this Court is to look at the incentives of the officers at the time that they are conducting the search. And the point being that the officers at that time are not going to be focused on whether this person is on supervised release and what penalties they may get if they violate supervised release. Instead, they're going to be focused on making sure that the evidence they're looking for is introduced at a criminal trial. And that's where the deterrence effects are going to be felt. Unless the Court has any further questions, the government will rest on its brief. All right. That's fine. Thank you. Thank you. Ms. Heller, you have two minutes in rebuttal. Just briefly, Your Honor. While the public obviously has an interest in ensuring that people on supervised release are not breaking the law, the Supreme Court's focus on the ex-ante effect was questioned even by Judge Rakoff. While the police did not know that Mr. Hightower was on parole, they, in effect, got a second bite at the apple by if they couldn't get him on the criminal case. And by the way, the criminal case is still ongoing. They have not yet had the suppression hearing for this arrest. He did already... Which is taking place where? In the Bronx. This allows the police to get around the exclusionary rule and, frankly, encourages them to fail to follow the law. So, thank you, Your Honor. Thanks very much. We'll reserve. We'll argue. We'll now move to the next case, which is...